IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SARA B. WALDROP,

                Plaintiff,            OPINION AND ORDER

v.

                                              21-cv-22-wmc

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                Defendant.

---

Pursuant to 42 U.S.C. § 405(g), *pro se* plaintiff Sara Waldrop seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act. Waldrop claims that remand is warranted because Administrative Law Judge ("ALJ") Michael Schaefer disregarded portions of the record, failed to adequately develop the record with respect to her disability, demonstrated bias against her during the hearing and did not defer to her *pro se* status. For the reasons that follow, the court will affirm the denial of benefits.

FACTS[1]

**A. Background**

On November 27, 2018, plaintiff Sara Waldrop applied for child's insurance benefits, alleging disability beginning when she was 11 years old. Waldrop in particular alleged disability starting on July 5, 1972 due to her panic attacks, depression, agoraphobia,

---

[1] The following facts are drawn from the administrative record, available at dkt. #15.

memory loss and chronic fatigue. Her claim was denied initially and on reconsideration, and plaintiff requested a hearing before an ALJ.

## B. ALJ Hearing

On May 21, 2020, Waldrop appeared for a hearing via videoconference due to the COVID-19 pandemic. At the start of the hearing, the ALJ detailed Waldrop's right to representation, and Waldrop agreed that she had discussed her right to representation with someone over the phone and had also received a detailed written notice about that right. (AR at 31-35.). After this discussion, Waldrop stated that she did not want to seek representation, and the ALJ found that she waived her right to be represented. (AR at 35.)

However, prior to receiving any testimony or evidence, the ALJ advised Waldrop that to find she suffered from a severe impairment, he needed objective medical or psychological evidence establishing a disability prior to July 4, 1983. He explained that the question he had for her was whether he had evidence relevant to that time period, since the medical evidence provided for her claim was limited to obstetric records from 1985 and 1986, and 2017 records from a clinic related to Waldrop's dental pain. (AR at 40.)

Waldrop stated that she did not, but that the Social Security Administration previously possessed records related to her visits to certain counselors, by virtue of a 2004 disability finding with an onset date of September 1, 2004. However, the ALJ explained that although he had located her file related to that determination, the Agency did not have electronic records at that time and her paper file had been purged consistent with common practice. (*Id.* at 42.) He further stated that, unfortunately, the only information in the file was a general finding of disability, without any details. (*Id.*)

At a later point during the hearing, the ALJ revisited whether records of her symptoms existed, probing whether Waldrop had any reason to believe records may be in existence, explaining that the agency could assist her in locating those records if she believed they might be available. Waldrop responded that she did not know, stating that everyone she had contacted responded that the records were not available. (*Id.* at 47-48.)

The ALJ also received testimony from Waldrop about her condition prior to 1983. Waldrop's testimony focused on her experiences in school, which involved feelings of fear and panic, and school absences because of those feelings. Waldrop stated that a school counselor believed that she was on drugs when she was 11, but her parents believed her when she denied drug use. (*Id.* at 44-45.) The ALJ interjected at one point during this portion of her testimony, asking her whether the symptoms she experienced at that young age were the same "conditions and symptoms" she experienced in 2004, and Waldrop said yes, but that she was not actually diagnosed with panic anxiety disorder, agoraphobia and depression until "years" later. (*Id.* at 45.) When a few minutes later Waldrop elaborated on her experience in school, the ALJ interrupted again, asking Waldrop whether she had received any kind of mental health counseling or therapy, and she responded that therapy was not a financial option for her family and, in any event, not an option because of her family background. (*Id.* at 50.)

After Waldrop testified, the ALJ asked vocational expert Jacquelyn Wenkman a few hypothetical questions. He asked in particular the limitations and available work for a hypothetical person, who "due to mental health impairments and symptoms, will routinely be absent from work two or more days per month on a routine basis. And this person will

3

be distracted or off task from work performance or production, even on days when the person does work, at a level of 15 to 20% of the work period. That might not be every day, but it will be routine over the course of a few days or weeks, in the work period." (AR at 56.) The vocational expert answered that she would not expect such a person to have difficulty finding work.

### C.  ALJ Decision

On June 2, 2020, the ALJ issued an unfavorable decision. The ALJ first found that Waldrop had not engaged in substantial gainful activity for many years, and had no income for the past 20 years, further noting that Waldrop receives Title XVI benefits for anxiety and depression, with a September 1, 2004, onset date.

At step two, the ALJ determined that Waldrop had not been disabled at any time prior to July 4, 1983, the date she turned 22, finding in particular that there was no evidence to substantiate the existence of a medically determinable impairment. The ALJ specifically noted that the record contained just two exhibits totaling 22 pages of evidence, none of which was dated prior to 1983. Instead, the evidence consisted of obstetric records from 1985 and 1986, as well as 2017 notes related to Waldrop's dental pain. (AR at 16 (citing Exs. 1F, 2F, at 209-30).) The ALJ further noted Waldrop's testimony that she was "never treated for psychiatric conditions, never took medications and never participated in counseling prior to age 22." (*Id*.)

Since the ALJ reached that finding at step two, he concluded that she was not disabled. In July 2020, Waldrop sought review of the ALJ's decision, and the Appeals Council denied review in November 2020. This appeal followed.

OPINION

A federal court's standard of review with respect to a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

For individuals under the age of 18, the SSA established a three-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.924(a). At step one, the ALJ must determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.972(a). Here, the ALJ concluded that Waldrop had not engaged in substantial gainful activity for over 20 years. At step two, the ALJ must determine if the claimant has a "severe" medically determinable impairment or a combination of severe medically determinable impairments. 20 C.F.R. § 416.924(a). Here, the ALJ determined that plaintiff did not suffer from a severe medically determinable impairment or

combination of severe medically determinable impairments during the covered time period. As such, the ALJ did not consider the third step, which involves determining whether a claimant had either an impairment or combination of impairments that met or medically equalled the severity of a listing or that functionally equals a listing. 20 C.F.R. §§ 416.923, 416.924a(b)(4) and 416.926a(a) and (c).

Plaintiff's arguments challenging this finding are unavailing, even when construed generously. Her briefing is just a few pages, and she refers the court to attached snippets of the hearing transcript, which contains highlighted portions and hand-written arguments in the margins. (*See* dkt. ##17, 17-1.) Construing plaintiff's arguments generously, plaintiff's disjointed assertions are fairly categorized as challenges to: (1) the ALJ's conclusion that she did not suffer from a medically determinable impairment prior to 1983; (2) the ALJ's development of the record; (3) the ALJ conduct during the hearing; and (4) the ALJ's treatment of her *pro se* status during the proceedings. The court addresses each in turn.

I. **Substantial Evidence**

With respect to the ALJ's handling of the evidence, plaintiff appears to suggest that the ALJ did not appropriately consider her testimony that she stopped going to school because of fear and anxiety, and that when she was younger, she would run out of the classroom. (*See* dkt. #17-1, at 22-23.) Yet the ALJ did not discount this testimony and, in fact, investigated whether verifying medical records might exist from that period of time, asking plaintiff whether she received any mental health counseling or therapy, to which

6

plaintiff responded "no." Plaintiff also points to her testimony that although she was not part of special education programming, she had been placed in a class where she helped "other kids that had problems," even though she was crying at the time (*Id.* at 23.) However, she also testified that it calmed he down to help these other students and that she had not taken medication when she was in school. (*Id.*)

Plaintiff would also point to her testimony that all of the challenges that caused her to be unable to work as of 2004 were present when she was over 20 years younger. (*Id.* at 24.) Plaintiff does not explain how the ALJ's questions skirted the inquiry into whether she suffered from a medically determinable impairment, and in fact the ALJ's series of questions demonstrates his attempt to gather more information about plaintiff's mental health so that he could have a concrete basis to evaluate whether she suffered from a medically determinable impairment during the covered time frame.

In her reply brief, plaintiff adds that the ALJ disregarded the assessment of an individual named Dr. Gronau, who plaintiff claims examined her as a part of the proceedings resulting in her 2004 disability finding. Although plaintiff maintains that Dr. Gronau believed her condition existed at an early age, any assessment conducted by Dr. Gronau is not part of the record, and plaintiff did not bring up that assessment when the ALJ questioned her about potentially available records or the nature of her symptoms prior to 1983. Moreover, plaintiff has not offered any specific details about Dr. Gronau's assessment of her, including when the assessment took place, what records Dr. Gronau reviewed, Dr. Gronau's particular diagnoses, or which conditions Dr. Gronau stated he believed existed prior to 1983.

Plaintiff further challenges the ALJ's questions to the vocational expert, arguing that his questions did not address panic or anxiety. (*Id.* at 27.) However, plaintiff declined to question the vocational expert, and her general criticisms of the ALJ's questions about the impact of mental health limitations generally does form a basis for remand. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of [the claimant's] testimony, we will not reweigh evidence or substitute judgment for the ALJ's.") (citing *LDR v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019)). In any event, the ALJ's hypothetical questions covered the impact of mental health impairments generally on productivity and the ability to function in a workplace. Plaintiff appears to suggest that this hypothetical was not specific to the feelings of anxiety and panic she experienced at school, but she has not explained how this line of questioning inadequately captured how her conditions manifested and impacted her ability to function prior to 1983. In any event, given that the ALJ determined that she was not disabled at step 2, the ALJ did not engage in the analysis at step 3, and, therefore, did not rely on Wenkman's testimony to conclude that plaintiff was not disabled.

Plaintiff has not otherwise challenged the ALJ's findings, so she has waived any further disputes she may have with the ALJ's finding. *Cadenhead v. Astrue*, 410 F. App'x 982, 994 (7th Cir. 2011) ("A generalized assertion of error is not sufficient to challenge an adverse ruling, and undeveloped or unsupported contentions are waived.") (citations omitted). Therefore, the court turns to her remaining arguments, all of which relate to her perception that she did not receive a full and fair hearing.

## II. Duty to Develop the Record

The court is sympathetic to plaintiff's frustration that the ALJ did not have access to any of plaintiff's medical records from the covered time period, especially given the Agency's 2004 finding that she is disabled. Indeed, while a social security claimant bears the burden of proving disability, an ALJ always has a duty to develop a full and fair record. 42 U.S.C. § 405(g); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). When a claimant appears without counsel, willingly or not, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Nelms*, 553 F.3d at 1098. More specifically, although plaintiff had to submit "some medical evidence" support her claim, the ALJ was "required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians medical sources to request additional records and information." *Id.* (citations omitted).

That said, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *Luna v.* Shalala, 22 F.3d 687, 692 (7th Cir. 1994). "And an omission is significant only if it is prejudicial." *Nelms*, 553 F.3d at 1098 (citation omitted). In other words, "'mere conjecture or speculation that additional evidence might have been obtained . . . is insufficient to warrant a remand.'" *Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). Rather, "a clamant must set forth specific, relevant facts – such as medical evidence – that the ALJ did not consider." *Nelms*, 553 F.3d at 1098 (citations omitted); *see Kobs v. Saul*, No. 19-cv-571, 2020 WL 4364538, at *6 (E.D. Wis. July 30, 2020) (although an ALJ's duty to develop the record

9

is heightened with an unrepresented claimant, a significant omission is usually required before the court faults an ALJ for failing to develop the record, and the decision of how much evidence to gather generally remains with the Commissioner) (citation omitted).

In fairness to plaintiff, the hearing was relatively short, approximately 51 minutes. However, during that time frame, the ALJ received plaintiff's testimony in which she detailed her pre-1983 symptom, discussed with plaintiff the possibility of obtaining additional records relevant to the covered time period and received testimony from the vocational expert. Plaintiff faults the Social Security Administration for losing certain records that would prove her disability before she reached the age of 22, explaining that her efforts to contact her medical providers from that period of time were unsuccessful, since they were either no longer in business, could not locate the doctors or had purged their records. However, there is no indication in the record that the ALJ failed to make appropriate efforts to locate those the information from plaintiff's 2004 disability proceedings. To the contrary, the record shows that in January of 2019, the Agency attempted to obtain plaintiff's records, but found that those records had been destroyed. (*See* AR at 159-63.) Additionally, during the hearing the ALJ explained that the Agency would be able to assist her in obtaining certain records if she believed any were in existence for the relevant time period. Yet plaintiff did not take him up on that offer, conceding that the 2004 records were no longer available. Moreover, the ALJ pressed plaintiff multiple times for information about whether there were *any pre-1983* records detailing her symptoms or her mental health treatment efforts. The fact that plaintiff responded that she did not seek out counseling or obtain formal diagnoses does not suggest that the ALJ

abdicated his responsibility to develop the record or failed to attempt to do so. Instead, it appears that there was no record to develop.

Even assuming that the ALJ was obliged to take further steps to try to locate the destroyed records related to plaintiff's 2004 disability determination, plaintiff has not shown that any omission was significant. In other words, the court still has no evidence that the records from the 2004 proceedings would have shown that she had been diagnosed with any of the conditions supporting the 2004 disability finding *prior to* 1983. Rather, the only indication that those records could be relevant is plaintiff's general testimony that the symptoms she experienced as of 2004 were the same as those she experienced prior to 1983. She offers no particulars considered in the 2004 proceeding that might indicate that she suffered from a medically determined impairment between July 5, 1972, and July 4, 1983. At most, plaintiff provides a vague reference to Dr. Gronau's belief that her condition existed at an early age. Yet even assuming Dr. Gronau made that comment in his assessment of plaintiff in 2004, such a comment is not tied to any date or specific diagnosis and far too undeveloped to suggest that the ALJ's decision could have been impacted by that assessment. In any event, plaintiff did not mention Dr. Gronau's assessment during the hearing, so the ALJ did not have any reason to believe that he was in a position to do more to seek out this particular assessment. Ultimately, without *some* indication that concrete evidence of treatment she sought or prior diagnoses existed, the court has no basis to fault the ALJ for failing to develop the record further. *See Juza v. Berryhill*, No. 17-C-439, 2018 WL 1010209, at *4-5 (E.D. Wis. Feb. 21, 2018) (even *pro*

*se* claimant cannot show that the ALJ failed to develop the record if the claimant does not show that additionally evidence actually exists).

There appear to be three other pieces of evidence that plaintiff believes were absent from the proceedings before the ALJ. *First,* plaintiff attempted to supplement the record during her appeal, submitting treatment records showing that she sought counseling for anxiety and stress in 2011, which showed that she had claimed that her symptoms began around age 13 or 14, a few years after the claimed time period. (AR at 21.) *Second,* plaintiff had also submitted a record showing that her counselor provided diagnoses on a discharge/transfer summary form in June of 2013, including agoraphobia with panic disorder, a dysthymic disorder, a generalized anxiety disorder and obsessive-compulsive disorders. (*Id.* at 22.) Yet plaintiff has not explained how those records suggest similar *diagnoses* prior to 1983. In any event, her counselor's diagnosis is not an acceptable medical source, *see* 20 C.F.R. § 404.1502, so even if the ALJ had received these records, his conclusion remains supported by substantial evidence.

*Third*, plaintiff also suggests that during the hearing she was prevented from presenting witness testimony, suggesting that she was told that she could not have witness testimony because the hearing was being held via videoconference. Therefore, she has filed with the court a written statement from her ex-husband who has knowledge of her condition. Yet plaintiff has not shown that the ALJ prevented her from submitting witness testimony or even knew plaintiff desired it. Plaintiff makes no representation that she actually requested and was denied the chance to introduce witness testimony. Moreover, there is no dispute that she received a notice that she could submit witness testimony

during the hearing.  (AR at 93.)  Regardless, her ex-husband's unauthenticated and unsigned statement again provides vague information:  he states that he has known plaintiff since she was 20 years old, and that he witnessed panic attacks and behavior he eventually learned was symptoms of agoraphobia.  (*See* dkt. #21.)  His impression of his ex-wife is not significant evidence as to whether plaintiff had a medically determinable impairment prior to 1983.

In sum, plaintiff has not shown that the ALJ failed to develop the record, much less that she was prejudiced by the ALJ's failure to supplement the record with more information about her condition prior to 1983.

### III.  ALJ's Conduct

Plaintiff next claims that the ALJ interrupted her when she was answering questions during the hearing.  The burden of establishing that remand is warranted due to an ALJ's demeanor is substantial, requiring the plaintiff to show that the ALJ had a "deep-seated an unequivocal antagonism that would render fair judgment impossible."  *Keith v. Barnhart*, 473 F.3d 782, 788-89 (7th Cir. 2007) (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)).  The record of the hearing falls far short of meeting this standard.

Plaintiff points to a few points during the hearing in which the ALJ cut her off. First, while she was explaining her symptoms when she was about 11 years old, the ALJ interrupted and asked her whether those symptoms were the same as the symptoms she experienced in 2004.  (*See* dkt. #17-1, at 18.)  However, the ALJ allowed her to answer that question, and then he followed up by asking her whether she still suffers from those

symptoms and she responded by elaborating on how she has dealt with the symptoms over time. (*Id.* at 19.) Plaintiff would also point to the ALJ's questions about what materials the Agency would have possessed due to the 2004 finding of disability, suggesting that he did not let her elaborate. However, she fails to identify what she was trying to explain to the ALJ that was not already part of her testimony. Therefore, these assertions neither suggest bias on the part of the ALJ, much less otherwise indicate that the ALJ denied her a full and fair hearing warranting remand. Instead, if anything, the questions posed by the ALJ demonstrate that he was attempting to assist her in developing any evidence for the relevant period.

### IV.    Impact of *Pro Se* Status

Finally, plaintiff does not explicitly assert that her proceeding *pro se* justifies a remand, but for the sake of completeness, the court finds that she knowingly waived her right to representation. Indeed, the ALJ took pains to ensure plaintiff's understanding of her right to representation and further confirmed on the record that plaintiff had read the written materials about her right to representation. (AR, at 31-35, 85-87, 89-92, 103, 108-09, 194.) These notices provided plaintiff details about how she could obtain representation, that free or contingency representation was possible, and that attorney's fees would be capped. This information was more than sufficient to apprise plaintiff of the ways in which she could obtain representation. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019) ("so long as it contains the required information, written notice adequately apprises a claimant of his right to counsel").

In sum, plaintiff has not shown that the ALJ's decision was unsupported by substantial evidence and has failed to identify any reversible error in the ALJ's decision or handling of plaintiff's claim.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Sara Waldrop's application for disability insurance benefits is AFFIRMED.

2) The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 29th day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge